## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**DUSTIN BUXTON,**
2706 Taylor Avenue
Parkville, Maryland 21234

        **Plaintiff,**

        **v.**

**SANDRA KURTINITIS, individually and in
her official capacity as President of
THE COMMUNITY COLLEGE OF
BALTIMORE COUNTY,**
7201 Rossville Boulevard
Baltimore, Maryland 21237

**CAROL EUSTIS, individually and in her
official capacity as Dean of Instruction for
the School of Health Professions at
THE COMMUNITY COLLEGE OF
BALTIMORE COUNTY,**
7201 Rossville, Maryland 21237

**ADRIENNE DOUGHERTY, individually
and in her official capacity as Program
Director and Coordinator of Radiation
Therapy at THE COMMUNITY
COLLEGE OF BALTIMORE COUNTY,**
7201 Rossville Boulevard
Baltimore, Maryland 21237

**CHARLES MARTINO, individually and in
his official capacity as Academic Advisor for
the School of Health Professions at
THE COMMUNITY COLLEGE OF
BALTIMORE COUNTY,**
7201 Rossville Boulevard
Baltimore, Maryland 21237; and

**CIVIL ACTION NO.**

**EBONY THOMAS, individually and in her official capacity as Coordinator for Selective Admissions in the School of Health Professions at THE COMMUNITY COLLEGE OF BALTIMORE COUNTY, 7201 Rossville Boulevard Baltimore, Maryland 21237**

       **Defendants.**

## VERIFIED COMPLAINT

Plaintiff Dustin Buxton, by and through counsel, brings this action for relief against Sandra Kurtinitis, President of The Community College of Baltimore County, Baltimore, Maryland ("CCBC"); Carol Eustis, Dean of Instruction for the School of Health Professions at CCBC; Adrienne Dougherty, Program Director and Coordinator of Radiation Therapy at CCBC; Charles Martino, Academic Advisor for Health Professions at CCBC; and Ebony Thomas, Coordinator for Selective Admissions in the School of Health Professions at CCBC, and hereby states as follows:

### INTRODUCTION

1.     In March 2013, following Mr. Buxton's completion of the admission requirements and process for acceptance to CCBC's Radiation Therapy Program, Mr. Buxton was informed that he would not be admitted to the program despite surpassing the stated standards of a competitive candidate. Shortly after receiving this news, Mr. Buxton learned that the denial was based in part on the assertion that he allegedly brought up religion in his interview. Defendant Dougherty, in her written review of Mr. Buxton, stated that "this is a field that involves death and dying; but religion cannot be brought up in the clinic by therapists or students."

2.     Again in March 2014, following Mr. Buxton's completion of the admission requirements and process for acceptance to CCBC's Radiation Therapy Program, Mr. Buxton was once more informed that he would not be admitted to the program despite once again surpassing the stated standards of a competitive candidate.

3.     Mr. Buxton made attempts to address with CCBC officials the discriminatory reasoning upon which they denied him admission to the Radiation Therapy Program. CCBC officials, however, not only affirmed the initial discriminatory decision, they committed further acts of retaliation against Mr. Buxton, including placing a retaliatory *85 year* "hold" on his academic status.

4.     This lawsuit seeks damages, a declaratory judgment, and injunctive relief requiring Defendants to accept Mr. Buxton into CCBC's Radiation Therapy Program and prohibiting them from further retaliating and/or discriminating against Mr. Buxton based on his religious views and/or his expressions thereof.

## JURISDICTION AND VENUE

5.     This action raises federal questions under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

6.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-02; and costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because Defendants reside in this district and/or all of the acts described in this Complaint occurred in this district.

## PARTIES

8.     Dustin Buxton is a private citizen residing in Maryland and a prospective student for the Radiation Therapy Program at CCBC.

9.     Defendant Sandra Kurtinitis serves as the President of CCBC. President Kurtinitis is the official through whom the CCBC Board of Trustees carries out its policies. She is responsible for the conduct and operation of the college and for the administration and supervision of its departments.

10.     Defendant Carol Eustis serves as the Dean of Instruction for the School of Health Professions, including the Radiation Therapy Program, at CCBC.

11.     Defendant Adrienne Dougherty serves as the Program Director and Coordinator of the Radiation Therapy Program at CCBC. Defendant Dougherty is responsible for overseeing and coordinating the processing of applications for the Radiation Therapy Program, as well as academic advising, testing, evaluation, and admissions to the program.

12.     Defendant Charles Martino serves as the Academic Advisor for the School of Health Professions, including the Radiation Therapy Program, at CCBC.

13.     Defendant Ebony Thomas serves as the Coordinator for Selective Admissions for the School of Health Professions, including the Radiation Therapy Program, at CCBC.

## STATEMENT OF FACTS

4

14.     CCBC is a public community college organized and existing under the laws of the State of Maryland.

15.     CCBC is governed by the Board of Trustees, the President, and Vice Presidents. CCBC's mission, as published on its website, is to "provide[] an accessible, affordable, and high-quality education that prepares students for transfer and career success, strengthens the regional workforce, and enriches [the] community."

16.     CCBC and its representatives have an obligation to abide by the following nondiscrimination policy, as published on the CCBC website:

**Nondiscrimination and Equal Opportunity**

The Community College of Baltimore County does not discriminate against any individual for reason of race, sex, color, religion, national or ethnic origin, age, sexual orientation or conditions of handicap in the admission and treatment of students, educational programs and activities, scholarship and loan programs, hiring of faculty and staff, or any terms and conditions of employment.

CCBC recognizes the value of a diverse work force that is reflective of the students and of the community we serve, and as such, the college is committed to welcoming, respecting and embracing the differences and similarities of our employees and our students.

We acknowledge the richness of multiculturalism and diversity. We hold each member of the college community responsible and accountable for fostering a climate of acceptance, inclusion, respect and dignity of all persons.

17.     In January 2013, and in accordance with CCBC's guidelines for admission, Mr. Buxton submitted his application for admission to the Radiation Therapy Program for the then-upcoming fall 2013 semester.

18.     According to CCBC's college catalog, "Radiation Therapy utilizes radiation and radioactive isotopes in the treatment of disease, primarily cancer. The Radiation Therapist provides services for treatment of malignant and non-malignant disease. The Radiation Therapist

is responsible for localizing the tumor, implementing the treatment plan, observing and evaluating clinical progress of the patient."

19.     According to CCBC's college catalog, the academic credentials of the most competitive candidates for CCBC's Radiation Therapy Program include a minimum 2.5 overall GPA and completion of select courses (including BIOL 109 or BIOL 220 & BIOL 221, MATH 135, PHYS 101 and RTTT 101) with a grade of "C" or above.

20.     At the time of his application for admission in 2013, Mr. Buxton had completed each of the required courses and had obtained the following grade in each course: "B" in BIOL 109, "B" in MATH 135, "B" in PHYS 101, and "A" in RTTT. Mr. Buxton's overall GPA of 3.14 exceeded the GPA criteria of a competitive candidate for the CCBC Radiation Therapy Program.

21.     Further, in a letter dated May 29, 2013, CCBC identified Mr. Buxton's academic performance as "outstanding" and informed Mr. Buxton he would be placed on the Spring 2013 CCBC Dean's List.

22.     CCBC's admission policy to the Radiation Therapy program is based on a three-part point system with the following weighted areas: (1) Prerequisite GPA – 30%; (2) Interview & Observation Day – 40%; and (3) Writing Sample and Critical Thinking Exam – 30%.

23.     Shortly after the submission of his application in 2013, Mr. Buxton was invited to continue with the admissions process, which included an observation and interview with Defendant Dougherty, as well as completion of a writing sample and critical thinking exam.

24.     Following completion of the admissions process, Mr. Buxton learned that he was not accepted to the program for the fall 2013 semester.

25.     This came as a surprise to Mr. Buxton because his overall GPA exceeded the standards of a "competitive candidate" for the program, as described in CCBC's admissions catalog.

26.     On June 27, 2013, Mr. Buxton learned in an interview review with Defendant Martino, CCBC Academic Advisor for the School of Health Professions, that he had received a strikingly low score in his interview as compared to the other evaluation criteria.

27.     Mr. Buxton recalls that early in the interview, the panelists asked him the broad question, "What do you base your morals on?" Mr. Buxton simply answered, "My faith." Mr. Buxton made no other mention of his faith or religion.

28.     Nonetheless, in a written review of Mr. Buxton's interview, Defendant Dougherty stated that Mr. Buxton had lost points on his interview score because, "He [Mr. Buxton] also brought up religion a great deal during the interview. Yes, this is a field that involves death and dying; but religion cannot be brought up in the clinic by therapist or students."

29.     Mr. Buxton was not the only applicant who lost points on his interview as a result of the expression of his religious beliefs. Brandon Jenkins, another applicant for CCBC's Radiation Therapy Program for the fall 2013 semester was also informed that he lost points during his interview for this same reason.

30.     In an email to Mr. Jenkins, Defendant Dougherty listed the reasons why Mr. Jenkins lost points during his interview, offering the following explanation:

> I understand that religion is a major part of your life and that was evident in your recommendation letters, however, this field is not the place for religion. We have many patients who come to us for treatment from many different religions and some who believe in nothing at all. If you interview in the future, you may want to leave your thoughts and beliefs out of the interview process.

7

31.     Following his interview review on June 27, 2013, Mr. Buxton became concerned about the reasons for which he was denied admittance to the Radiation Therapy Program.

32.     On or about August 7, 2013, due to his concerns that he was denied admittance because of his religious beliefs, Mr. Buxton contacted Defendant Carol Eustis, Dean of the School of Health Professions, to discuss his denial for admittance to the Radiation Therapy Program.

33.     Mr. Buxton attempted to schedule an appointment with Defendant Eustis through her secretary. When Defendant Eustis's secretary asked what the subject of the meeting would be, Mr. Buxton stated that he believed he had not been accepted to the Radiation Therapy Program for discriminatory reasons. Defendant Eustis's secretary took Mr. Buxton's contact information and said that Dean Eustis would be in contact with him to schedule a meeting. Mr. Buxton, however, never received a reply from Defendant Eustis.

34.     In December 2013, and in accordance with CCBC's guidelines for admission, Mr. Buxton again submitted his application for admission to the Radiation Therapy Program for the upcoming fall 2014 semester.

35.     At the time of his application for admission in 2014, Mr. Buxton had completed each of the required courses and had obtained the following grade in each course: "B" in BIOL 109, "A" in MATH 135, "A" in PHYS 101, and "A" in RTTT. Mr. Buxton's overall GPA of 3.43 far exceeded the GPA criteria of a competitive candidate for the program, and marked a demonstrable improvement in his academic credentials since the previous year.

36.     In a letter dated March 12, 2014, Defendant Ebony Thomas, the Coordinator at the Admissions office of the CCBC School of Health Professions, informed Mr. Buxton that he

8

would not be granted an interview as he had the year before and that he had "not been accepted for the class that begins Fall 2014." The letter incorrectly stated that Mr. Buxton's application packet was not competitive because he had not completed the Observation Day during RTTT 101.

37.     On March 14, 2014, in an attempt to obtain clarity regarding CCBC's decision not to admit him, Mr. Buxton emailed Defendants Dougherty and Martino, and copied Vice President of Instruction at CCBC, Mark McColloch, informing them that he had in fact completed the required observation day. He also noted that while he was granted an interview during the 2013 application process, he was not granted an interview during the 2014 application process, despite the fact that he had improved his GPA from a 3.14 in 2013 to a 3.43 in 2014.

38.     Four days later, on March 18, 2014, Defendant Thomas responded to Mr. Buxton's email and explained that she had sent Mr. Buxton the incorrect letter indicating the reason he was not admitted to the Radiation Therapy Program and would have the correct letter sent to him. Defendant Thomas also wrote that despite his having completed the observation day requirement and the significant increase in his GPA, Mr. Buxton's "application was not competitive enough to earn an interview."

39.     Mr. Buxton later received a letter dated March 18, 2014, signed by Defendant Thomas, stating that Mr. Buxton had not been accepted for admission to the 2014 Radiation Therapy Program. The letter simply stated that "both an exemplary observation day and top grades in the prerequisites are integral to the admissions process . . . I am sorry to inform you that you have not been accepted for the class that begins in 2014."

40.     Mr. Buxton was perplexed by this as he had top grades in his prerequisite courses and a good observation day.

41.     Upon information and belief, CCBC's refusal to grant Mr. Buxton an interview for, and ultimately admission to, the 2014 Radiation Therapy Program was based, like his denial of admission in 2013 – and the denial of admission to Brandon Jenkins – not on valid admissions criteria but rather on Defendant Dougherty's clearly expressed bias against religious expression in the radiation therapy field, as evidenced by the statements in her 2013 written review that "[Mr. Buxton] also brought up religion a great deal during the interview. . . . [B]ut religion cannot be brought up in the clinic by therapist or students," and her statement to Mr. Jenkins that the radiation therapy field "is not the place for religion."

42.     On April 21, 2014, a federal lawsuit was filed in the U.S. District Court for the District of Maryland entitled, *Brandon Jenkins v. Kurtinitis, et al.*, No.: 1:14-CV-01346 (D. Md. filed Apr. 21, 2014). Filed on behalf of Brandon Jenkins and against several CCBC officials, including many of the same CCBC officials named as defendants in this Complaint, the lawsuit alleges Free Speech and Establishment Clause violations, as well as a violation of the Constitution of the State of Maryland. Mr. Jenkins claims in his complaint that he too, like Mr. Buxton, was denied admittance to the CCBC Radiation Therapy Program for the fall 2013 semester because of the expression of his religious beliefs and viewpoint.

43.     Specifically, in his complaint Mr. Jenkins alleges that he too met the qualifications to be a competitive candidate to the Radiation Therapy Program and, additionally, had obtained the maximum score on his observation requirement. Mr. Jenkins, however, was also not admitted to the Program, and was informed that it was, in part, because CCBC officials

had concluded that religion was a major part of his life and, as Defendant Dougherty stated, the "field [of radiation therapy] is not the place for religion."

44.     After the filing of the complaint in *Jenkins v. Kurtinitis, et al.*, and in the interest of preserving relevant documentation in the above-referenced litigation, the American Center for Law and Justice (ACLJ) – counsel for Mr. Jenkins and for Mr. Buxton – notified CCBC officials that ACLJ had learned that another student had been denied admission into the CCBC Radiation Therapy Program on religiously discriminatory grounds and requested that CCBC ensure preservation of all documents in the files of prior applicants to the Radiation Therapy Program.

45.     Following the ACLJ's notice to CCBC officials on or about May 13, 2014, Mr. Buxton met with Defendant Martino, the academic advisor for the Radiation Therapy Program on May 29, 2014, to review his written evaluation from the previous year, written by Defendant Dougherty. Although Mr. Martino acknowledged three times having previously read the review to Mr. Buxton, he refused to provide Mr. Buxton with a copy of the written review, or even to reread the review to Mr. Buxton.

46.     Prior to his meeting with Defendant Martino, while seated in a waiting area, Mr. Buxton observed two CCBC Campus Police Officers arrive at Defendant Martino's office. The officers remained outside the office during Mr. Buxton's meeting with Defendant Martino.

47.     During the meeting, and in response to Mr. Buxton's assertion of his legal right under the Family Educational Rights and Privacy Act ("FERPA") to review the document written by Defendant Dougherty, Defendant Martino provided Mr. Buxton the FERPA paperwork and told him he would have to turn in a written request to receive a copy of Defendant Dougherty's review.

48.     Defendant Martino also affirmed during this meeting that he did not believe Mr. Buxton had been denied admission to the Radiation Therapy Program based upon his GPA.

49.     On June 27, 2014, Mr. Buxton, by and through his attorneys, contacted CCBC President, Defendant Kurtinitis, and Defendant Dougherty and placed them on notice of yet another incident of unconstitutional conduct involving an applicant to the Radiation Therapy Program.

50.     Mr. Buxton's letter recited the facts surrounding his application processes and the conduct of CCBC officials and employees during the 2013 and 2014 admission cycles, and the subsequent denials of admission to the program that resulted. Just as Brandon Jenkins's letter to CCBC officials did in June 2013, Mr. Buxton's letter informed Defendants Kurtinitis and Dougherty that such conduct violated the First Amendment and CCBC's own nondiscrimination policy. *See* Letter from ACLJ to Sandra Kurtinitis dated June 27, 2014, attached hereto as **Exhibit A.**

51.     Almost one year prior to Mr. Buxton's letter to CCBC officials, Defendants Kurtinitis, Martino, and Dougherty had been placed on notice of a similar incident of retaliation by Defendant Dougherty against Brandon Jenkins. In a letter to Defendants Kurtinitis and Dougherty, Mr. Jenkins, by and through counsel, informed CCBC officials of a position taken by Defendant Dougherty with regards to religion in the field of Radiation Therapy – specifically that Defendant Dougherty believed, and had stated quite clearly that "this field [of Radiation Therapy] is not the place for religion."

52.     On July 16, 2014, and prior to receiving an official response to his letter dated June 27, 2014, Mr. Buxton attempted to register for a class, BIOL 220, Anatomy &

Physiology 1, for the fall 2014 semester, via the online CCBC registrar portal. Upon information and belief, at the time he attempted to register for the class, at least 13 seats were available.

53.     Upon attempting to enroll in this class, Mr. Buxton received a notification which stated, "There are the [sic] holds on your record. If you have a registration hold you will not be allowed to register. If you have a grades hold you will not be able to view your grades. A transcript hold will prevent you from viewing your transcript."

54.     According to his account, the hold placed on Mr. Buxton's account was none of the aforementioned types, but was a "Dean's Hold," effective from July 1, 2014, to December 31, 2099.

55.     Under "Reason" for the Hold, Mr. Buxton was instructed to "meet with L. Mehan [sic] OR S.Eckhardt."

56.     According to the CCBC website for the Office of Judicial Affairs, Lori Meehan is a Judicial Affairs Advocate for the Behavior Intervention Team and Scott Eckhardt is the Director of Judicial Affairs.

57.     According to the Office's website, the goals of the Office of Judicial Affairs at CCBC are to "[p]rovide opportunities to resolve student conduct issues before escalating to Code of Conduct violations[,] [i]mplement the Code of Conduct in a consistent, fair and timely manner[, and] [e]ducate the College community on issues related to the Code of Conduct." The purpose of the Behavior Intervention Team, for which Ms. Meehan is the named Advocate, is "to serve as a central network for the behavior situations which raise concerns for the safety of the student or others."

58.     Mr. Buxton has never received a behavioral reprimand or notice of Code of Conduct violation during his time as a student at CCBC.

59.     On July 18, 2014, Mr. Buxton, by and through his attorneys, contacted counsel for CCBC regarding the Dean's Hold that was placed on Mr. Buxton's online registrar account, explaining that the placement of the Hold on Mr. Buxton's account, in light of the timing of the ACLJ's June 27, 2014, letter, constituted further retaliation against Mr. Buxton in violation of the First Amendment in response to his communication to CCBC through counsel regarding the religious discrimination he faced from CCBC officials. *See* Letter from ACLJ to Peter Saucier dated July 18, 2014, attached hereto as **Exhibit B.**

60.     Concurrently on July 18, 2014, counsel for CCBC responded to the ACLJ's June 27, 2014, letter and denied any wrongdoing on the part of CCBC officials. *See* Letter from Peter Saucier to ACLJ dated July 18, 2014, attached hereto as **Exhibit C.**

61.     On July 22, 2014, counsel for CCBC responded to the ACLJ's July 18, 2014, letter regarding the Dean's Hold placed on Mr. Buxton's account, stating that the hold had been lifted, but alleging that the Hold had been placed on Mr. Buxton's account "because of [Mr. Buxton's] conduct during an interaction with a College employee on May 29, 2014." *See* Letter from Peter Saucier to ACLJ dated July 22, 2014, attached hereto as **Exhibit D.**

62.     As addressed *supra*, Mr. Buxton met with Defendant Martino on May 29, 2014, to request receipt of Defendant Dougherty's written evaluation of Mr. Buxton during the 2013 Radiation Therapy Program admission process. While CCBC inexplicably stationed two CCBC campus officers outside Defendant Martino's office during this meeting, the meeting itself was neither contentious nor adversarial.

14

63. Also in CCBC's letter dated July 22, 2014, counsel for CCBC stated that the Hold was placed on Mr. Buxton's account after a Judicial Affairs officer attempted to reach Mr. Buxton by telephone, "but Mr. Buxton changed his telephone number without notice to the College."

64. In fact, Mr. Buxton has had the same telephone number for the last ten (10) years and it is this telephone number that is associated with Mr. Buxton's personal information on his online student account found within the CCBC SIMON program. This number has been listed in Mr. Buxton's SIMON account since 2011. Mr. Buxton never received a call or voicemail message from a CCBC Judicial Affairs officer.

65. In addition to their denials of his admission to the Radiation Therapy Program, CCBC officials' placement of a Dean's Hold on Mr. Buxton's account constituted further retaliation on the part of Defendants in response to Mr. Buxton's expression of his religious beliefs and in response to his communication to CCBC, through counsel, regarding the religious discrimination he faced from CCBC officials.

66. As a result of CCBC's discrimination and retaliation against Mr. Buxton for expression of his religious beliefs, Mr. Buxton has been unable to receive the proper training and education required at CCBC for a career in radiation therapy.

67. As a result of each of the Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm and is therefore entitled to an award of monetary damages, including punitive damages, and equitable relief.

## CAUSES OF ACTION

### COUNT I
**(Violations of the First Amendment – Freedom of Speech)**

68.     The allegations of Paragraphs 1 through 67 above are incorporated by reference herein as if fully set out.

69.     The First Amendment protects private speech from government interference, restriction, or discrimination when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction or discrimination.

70.     Plaintiff's expression of religious views enjoys First Amendment protection.

71.     Defendant Dougherty, individually and acting on behalf of her governmental employer, CCBC, unlawfully retaliated against Plaintiff and unlawfully deprived Plaintiff of his First Amendment rights in connection with and arising from his applications for admission to CCBC's Radiation Therapy Program by denying Plaintiff admission on the basis of his expression of his religious beliefs and viewpoint.

72.     Defendants Martino and Thomas, individually and acting on behalf of their governmental employer, CCBC, retaliated against Plaintiff and unlawfully deprived Plaintiff of his First Amendment rights by endorsing and approving Defendant Dougherty's determinations not to admit Plaintiff to the Radiation Therapy Program, which were based on unlawfully discriminatory and retaliatory reasons, and by using shifting justifications as a pretext to conceal improper and unlawful motives.

73.     Defendant Kurtinitis, individually and as an executive of and/or authority for CCBC, retaliated against Plaintiff and violated Plaintiff's First Amendment rights by refusing to admit Plaintiff to the Radiation Therapy Program because of his religious associations and expression, as indicated in Defendant Dougherty's written statements. Defendant Kurtinitis was

16

placed on notice of the discriminatory reasoning for Defendant Dougherty's decision regarding Plaintiff's application for admission and refused to correct that decision.

74.     Defendant Eustis, individually and as an executive of and/or authority for CCBC, retaliated against Plaintiff and violated Plaintiff's First Amendment rights by refusing to correct Defendant Dougherty's decision regarding Plaintiff's application for admission, after being placed on notice of the discriminatory decision to deny Plaintiff admission to the Radiation Therapy Program and by placing a retaliatory, 85 year "Dean's Hold" on Plaintiff's academic status merely because he protested Defendants' systematic, repeated violation of his rights.

75.     The Defendants' actions, taken in concert with the facts contained in the related case *Jenkins v. Kurtinitis, et al.*, No.: 1:14-CV-01346 (D. Md. filed Apr. 21, 2014), also alleging religious discrimination on the part of CCBC officials, constitute a pattern and practice of discrimination against students' expressions of religious beliefs and viewpoints in violation of the Free Speech Clause of the First Amendment to the United States Constitution.

76.     Each of the Defendants, individually and acting on behalf of their governmental employer, CCBC, explicitly and/or implicitly discriminated against Plaintiff for exercising his clearly established right to free speech on matters of religion as secured by the First Amendment to the United States Constitution.

**COUNT II**
**(Violation of the First Amendment – Establishment Clause)**

77.     The allegations of Paragraphs 1 through 76 above are incorporated by reference herein as if fully set out.

78.     The First Amendment requires governmental entities and employees, including those of the various states, to be neutral in their relations with groups of religious believers and

17

non-believers and forbids state action that has the effect of disapproving, inhibiting, or evincing hostility toward religion.

79.     Defendant Dougherty's decision to deny Plaintiff admission to the Radiation Therapy Program because of his religious expression and beliefs, and the decisions of Defendants Eustis, Kurtinitis, Thomas, and Martino to approve and uphold that denial – including by placing a retaliatory, 85 year "Dean's Hold" on Plaintiff's academic status merely because he protested Defendants' systematic, repeated violation of his rights -- constitute unlawful disapproval of and hostility toward religion.

80.     Defendant Dougherty's decision to deny Plaintiff admission to the Radiation Therapy Program because of his religious expression and beliefs, and the decisions of Defendants Eustis, Kurtinitis, Thomas, and Martino to approve and uphold that denial, did not have a secular purpose.

81.     Defendant Dougherty's decision to deny Plaintiff admission to the Radiation Therapy Program because of his religious expression and beliefs, and the decisions of Defendants Eustis, Kurtinitis, Thomas, and Martino to approve and uphold that denial, had the primary effect of inhibiting religion.

82.     Defendant Dougherty's decision to deny Plaintiff admission to the Radiation Therapy Program because of his religious expression and beliefs, and the decisions of Defendants Eustis, Kurtinitis, Thomas, and Martino to approve and uphold that denial, excessively entangled the government with religion.

83.     The Defendants' actions, taken in concert with the facts contained in the related case *Jenkins v. Kurtinitis, et al.*, No.: 1:14-CV-01346 (D. Md. filed Apr. 21, 2014), also alleging

religious discrimination on the part of CCBC officials, constitute a pattern and practice of discrimination against students' expressions of religious beliefs and viewpoints, and demonstrate clear bias against religion in violation of the Establishment Clause of the First Amendment to the United States Constitution.

**COUNT III**
**(Violation of the Fourteenth Amendment – Equal Protection)**

84.     The allegations of Paragraphs 1 through 83 above are incorporated by reference herein as if fully set out.

85.     The First Amendment applies to the states, and individuals acting on behalf of the state, through the Fourteenth Amendment.

86.     The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying a person equal protection of the laws and requires state officials to treat an individual in the same manner as others similarly situated.

87.     Defendants, as executives of and/or authorities for CCBC, acted under color of state law in denying Plaintiff admission to the Radiation Therapy Program for discriminatory reasons.

88.     Defendants treated Plaintiff, a competitive applicant for admission to the Radiation Therapy Program, differently than other similarly situated applicants by denying him an interview and admission to the Program because of his religious beliefs and viewpoint and by placing a retaliatory, 85 year "Dean's Hold" on Plaintiff's academic status in violation of the Equal Protection Clause of the Fourteenth Amendment.

89.     The Defendants' actions, practices, customs, and/or policies treat Plaintiff differently than similarly situated individuals on account of Plaintiff's religion and/or religious

19

exercise, in violation of Plaintiff's rights to equal protection under the law under the Fourteenth Amendment to the U.S. Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dustin Buxton respectfully requests that the Court enter judgment against Defendants, and provide Plaintiff with the following relief:

(A)     An injunction requiring Defendants to grant Mr. Buxton admission to CCBC's Radiation Therapy Program and prohibiting Defendants and all those in concert with them from further retaliating and/or discriminating against Mr. Buxton based on his religious views and/or his expressions thereof;

(B)     A declaratory judgment that Defendants' actions violated Mr. Buxton's rights as protected by the First and Fourteenth Amendments to the United States Constitution;

(C)     Monetary damages (including punitive damages for Defendants' actions in their individual capacities) in an amount to be determined by the jury;

(D)     Reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

(E)     All further relief to which Mr. Buxton may be entitled.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by his Complaint.

Respectfully submitted,

**GARZA LAW FIRM, P.A.**
JOHN GARZA Bar Number 01921
17 West Jefferson Street, #100
Rockville, Maryland 20850-2409
Tel: (301) 340-8200/Fax: (301) 761-4309
jgarza@garzanet.com

**AMERICAN CENTER FOR LAW & JUSTICE**
DAVID A. FRENCH*
dfrench@aclj.org
ABIGAIL A. SOUTHERLAND*
asoutherland@aclj.org
CARLY F. GAMMILL*
cgammill@aclj-dc.org
MICHELLE K. TERRY*
mkterry@aclj.org
188 Front Street, Suite 116-19
Franklin, Tennessee 37064
Tel: (800) 296-4529/Fax: (615) 599-5189

Attorneys for Plaintiff
*Admission *pro hac vice* pending